### IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | | |
|---|---|---|
| IVY GAUTIER-JAMES | ) | |
| | ) | |
| Plaintiff, | ) | CIV. NO.: 1:06-cv-00106 |
| v. | ) | |
| | ) | |
| HOVENSA, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

This matter is before the Court on Defendant Hovensa's five motions to strike and/or exclude Plaintiff Ivy Gautier-James' six untimely disclosed witnesses and experts.  This case has been pending since 2006.  By numerous motions of the parties, the initial June 30, 2007 discovery cutoff was extended approximately five times, giving the parties an additional three years to complete discovery.  The Court set June 30, 2010 as the final deadline for all fact discovery and July 31, 2010 as the final deadline for Plaintiff's Fed. R. Civ. P. 26(a)(2) expert disclosures.  Despite the additional three years of discovery and the firm June 30, 2010 deadline set by this Court, in January 2011, Plaintiff disclosed three never-mentioned-before fact witnesses, one of whom was a prior client of Defendant's counsel.  In January and February 2011, Plaintiff disclosed three more expert witnesses.  Defendant moves to strike these witnesses and experts on timeliness grounds.  Plaintiff opposes exclusion on the grounds that her complicated pregnancy and deteriorating medical condition made it impossible for her to disclose the witnesses in a more timely fashion.  After reviewing the facts surrounding the untimely disclosures, the substance of what these experts and witnesses will testify to, and

Plaintiff's proffered excuses, the Court finds that Plaintiff has flagrantly disregarded this Court's scheduling orders and that exclusion under Fed. R. Civ. Proc. 37 is therefore appropriate.

## II.    **PROCEDURAL BACKGROUND**

On August 8, 2006, Plaintiff Ivy Gautier-James ("Plaintiff") filed her initial complaint alleging that Defendant Hovensa ("Defendant") discriminated against her in her employment based on her gender.  (ECF No. 1)  In a nutshell, her complaint alleges that she was subject to a hostile work environment at Hovensa and that, after she complained about the mistreatment, she was subject to devastating retaliation by her superiors, culminating in her being forced into an extremely dangerous assignment wherein she was recklessly and intentionally exposed to toxic hydrogen sulfide fumes.  (*Id*.)

On October 12, 2006, the Magistrate Judge entered the first of many scheduling orders in this case, setting June 30, 2007 as close for "all factual discovery."  (ECF No. 9)  Between October 12, 2006 and April 6, 2010, on joint motion of the parties, the Court moved the discovery deadlines five times.  (*See* Scheduling Orders, ECF Nos. 19, 41, 72, 77, and 88)  Each of these scheduling orders set a date for the close of factual discovery and separate deadlines for the parties' expert disclosures, Plaintiff's deadline always being about a month before Defendant's deadline.

On April 6, 2010, the parties filed their sixth joint motion to extend the discovery deadlines.  (ECF No. 113)  In response, on April 14, 2010, the Magistrate Judge issued his "Revised Seventh Final Scheduling Order," stating that:

1. All factual discovery, including written discovery and fact witness depositions, will be completed by **June 30, 2010**.

2. Mediation will take place before **August 31, 2010**. Mediation shall be conducted pursuant to Local Rule of Civil Procedure 3.2.

3. The Plaintiff's experts will be named and copies of their opinions as provided in Fed. R. Civ. P. 26(a)(2) by **July 31, 2010**.

4. The Defendant's experts will be named and copies of their opinions as provided in Fed. R. Civ. P. 26(a)(2) by **September 15, 2010**.

5. All experts' depositions, as provided in Fed. R. Civ. P. 26(a)(2) will be completed by **November 1, 2010**.

(ECF No. 114) (emphasis in original)

On September 15, 2010, the parties filed their sixth joint motion to extend the discovery deadlines. (ECF No. 130)  However, unlike the prior joint motions to extend, the proposed scheduling order did not address either the fact discovery deadline (which had elapsed on June 30, 2010) or Plaintiff's expert disclosure deadline (which had elapsed on July 31, 2010).  Instead, the proposed order only sought an extension of Defendant's expert disclosure deadline, the expert deposition deadline, and the mediation deadline.  (ECF No. 130-1)  The stated basis for the requested extension was that Defendant's expert had requested to do an independent medical examination ("IME") of Plaintiff, but that because Plaintiff was 35 weeks pregnant, could not travel to Tampa, Florida (to a clinic appropriately equipped to handle Plaintiff's IME near Defendant's expert) until sometime after Defendant's September 15, 2010 expert disclosure deadline.  (ECF No. 130; *see also* Emails between Plaintiff's and Defendant's counsel, ECF No. 162-1) On September 17, 2010, the Magistrate Judge granted the joint motion and ordered that mediation take place by November 30, 2010, that Defendant's experts be disclosed and copies of their reports be provided to Plaintiff by January 31, 2011, and that expert depositions be completed by March 15, 2011.  (ECF No. 131)  That order did not revive the expired factual discovery deadline nor Plaintiff's expired expert disclosure deadline.

On November 23, 2010, Defendant moved to dispense with Court ordered mediation set to go forward on November 30, 2010 on the grounds that "there is no possibility of settling this matter anywhere in the ballpark demanded by Plaintiff" and that mediation "would be futile and a waste of the parties time and expenses."  (ECF No. 137)  Plaintiff opposed that motion on the grounds that "[m]ediation is for the Defendant to listen to Plaintiff's view of the facts and the Plaintiff to listen to the Defendant's view of the facts and for all parties to listen to the mediator to see if a matter can be settled."  (ECF No. 140)  The Court did not intervene and, on November 30, 2010, the parties attended mediation, but were unable to resolve any issues or reach a settlement.  (ECF No. 141)

On January 11, 2011, the parties filed their seventh joint motion to extend the discovery deadlines. (ECF No. 149)  Like the sixth joint motion (ECF No. 130), this motion reported that Plaintiff was still unable to travel to Tampa, Florida for the planned IME and sought an extension of Defendant's expert deadline to allow for the IME to go forward.  (ECF No. 149)  Neither the factual discovery deadline nor Plaintiff's expert disclosure cutoff were mentioned in the motion or proposed order.  On that same day, the Magistrate Judge granted the joint motion and set April 29, 2011 as the cutoff for Defendant's expert disclosure and June 30, 2011 as the expert deposition cutoff.  (ECF No. 152)  Again, this order made no mention of the expired June 30, 2010 factual discovery deadline or Plaintiff's expired July 31, 2010 expert disclosure deadline.

Also on January 11, 2011, after the joint motion to extend the discovery deadline was filed, Plaintiff filed a "Notice of Production of Expert Report of Richard Parent, PhD."  (ECF No. 151)  On January 14, 2011, Defendant filed a motion to strike this disclosure on the grounds that it was untimely.  (ECF No. 154)  On January 26, 2011, Plaintiff opposed that motion and

4

included a "Motion to File Out of Time Nunc Pro Tunc" seeking an extension of time to file her notice of expert under Fed. R. Civ. P 6(b).   (*See* Plaintiff's Opposition to Defendant's Motion to Strike Expert Disclosure and Plaintiff's Motion to File Out of Time Nunc Pro Tunc at 6, ECF No. 159)  Plaintiff claimed that her pregnancy and new-born child prevented her from disclosing Dr. Parent in a more timely fashion.  (*Id*. at p. 4)

On January 20, 2011, Plaintiff served Defendant with a "Second Supplemental Voluntary Disclosure Pursuant to Rule 26" containing four witnesses that "had knowledge of th[e] incident and how it has affected Plaintiff."  (ECF No. 164-1)  On February 2, 2011, Defendant filed a motion to exclude three of those four witnesses on the grounds that the second supplemental disclosure, filed months after the discovery cutoff, was the first time that they had ever been mentioned by Plaintiff.  (ECF No. 164)  On February 16, 2011, Plaintiff filed an opposition to Defendant's motion to exclude the three fact witnesses, virtually identical to her opposition to Defendant's motion to exclude Dr. Parent, and also including a Motion For Leave to File Out of Time Nunc Pro Tunc.  (ECF No. 173)

On or about January 26, 2011, Plaintiff served Defendant with the expert report of Robert Galt.  (ECF No. 160)  On February 2, 2011, Defendant filed a motion to exclude Galt's report on the grounds that it was untimely.  (ECF No. 163)  On February 15, 2011, Plaintiff filed an opposition to Defendant's motion to exclude Galt, virtually identical to her opposition to Defendant's motion to exclude Dr. Parent, and also including a Motion For Leave to File Out of Time Nunc Pro Tunc.  (ECF No. 172)

On February 3, 2011, Plaintiff served Defendant with a "Third Supplemental Voluntary Disclosure Pursuant to Rule 26" disclosing that Dr. Noel Totti III was a "[p]ulmonologist who is treating Plaintiff" and "will provide medical records once obtained."  (ECF No. 171-1)  On

5

February 14, 2011, Defendant filed a motion to strike this disclosure on the grounds that it was untimely.  (ECF No. 170)  As with the prior three motions to exclude, Plaintiff opposed on the grounds that her medical condition had necessitated the untimely filing and also moved *nunc pro tunc* for leave to file out of time.  (ECF No. 174)  Plaintiff produced Dr. Totti's expert report to Defendant on March 2, 2011.  (ECF No. 177)  Defendant has also moved *in limine* to exclude that report on the grounds that it was untimely.[1]  (ECF No. 179)

### III.   <u>ANALYIS</u>

With this procedural background in mind, the Court now turns to Defendant's motions. Essentially, Defendant seeks to exclude 1) the expert report and testimony of Dr. Parent who was disclosed to Defendant at least five months after Plaintiff's July 31, 2010 expert disclosure cutoff; 2) the testimony and report of Robert Galt, disclosed by Plaintiff almost six months late; 3) the testimony and expert report of Dr. Totti, who was disclosed to Defendant approximately six months after the expert discovery cut-off and whose report was disclosed over seven months late; and 4) the testimony of three fact witnesses, Virginia Moorhead, John McDonald, and Sharisma Fahie, who were disclosed to Defendant nearly seven months after the close of fact discovery.

Defendant argues that the experts and witnesses should be excluded because Plaintiff has flagrantly disregarded the Court's scheduling order, has failed to provide a good reason for her prolonged tardiness, and that it is unfairly prejudiced by these untimely witnesses and experts. Plaintiff, on the other hand, claims that her pregnancy and worsening medical condition precipitated these untimely disclosures, that Defendant will not be prejudiced by their inclusion because there is sufficient time before trial in which they can be deposed, and that "a more

---

[1] This Order also resolves that motion.

diligent pursuit of discovery was impossible." (*See* ECF No. 173 at p. 4)  Finally, Plaintiff argues

that there is no evidence that she missed the deadlines as a result of willfulness or bad faith.

### A.  Plaintiff's Disclosures of Moorhead, McDonald, Fahie, Galt, Parent and Totti Were Untimely

Under Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure (hereinafter, the

"Rules"), a party must disclose "the name and, if known, the address and telephone number of

each individual likely to have discoverable information--along with the subjects of that

information--that the disclosing party may use to support its claims or defenses, unless the use

would be solely for impeachment."  These disclosures are required to be made "at or within 14

days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court

order . . ." Fed. R. Civ. P. 26(a)(1)(B).

> Pursuant to Rule 26(e):
>
> A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed. R. Civ. Proc. 26(e).

Here, the last order addressing fact discovery, the "Revised Seventh Final Scheduling

Order," stated that "[a]ll factual discovery, including written discovery and fact witness

depositions, will be completed by **June 30, 2010**."  As Plaintiff acknowledges *sotto voce* in her

oppositions/motions for leave to file out of time, this June 30, 2010 discovery cutoff was the last

day for her to disclose factual witnesses.[2]  *See Ashman v. Solectron, Inc.*, 2010 WL 3069314, at *4 (N.D. Cal. Aug. 4, 2010) (stating that "[d]iscovery in this action closed on March 31, 2010. Any supplemental disclosure after such date would be untimely.");  *Spire Denver, LLC v. Hypo Real Estate Capital Corp.*, 2008 WL 3833754, at *2 (D. Colo. 2008) ("The failure to disclose witnesses prior to the close of discovery, which effectively forecloses the opposing party from conducting discovery on the supplemental disclosures, constitutes a violation of Rule 26.") (citations omitted); *Clark v. Wilkin*, 2008 WL 2388634 at *2 (D. Utah 2008) (stating that "[p]laintiffs' supplementation of the list of persons having discoverable information was untimely as the fact discovery deadline had already passed.").  Thus, the Court finds that the disclosure of Moorhead, McDonald, Fahie was untimely.

Fed. R. Civ. P 26(a)(2)(A) and (C) state that "in addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705 . . . A party must make these disclosures at the times and in the sequence that the court orders." Here, the "Revised Seventh Final Scheduling Order" stated that "[t]he Plaintiff's experts will be named and copies of their opinions as provided in Fed. R. Civ. P. 26(a)(2) by **July 31, 2010**." (ECF No. 114) (emphasis in original).[3]  Plaintiff disclosed Parent on January 11, 2011, Galt on January 26, 2011, and Totti on February 3, 2011, all more than five months after her expert disclosure deadline.  Accordingly, the Court also finds that the disclosure of these experts was untimely.

---

[2] The Court notes that Plaintiff has not taken a contrary position in her oppositions.

[3] Plaintiff produced the report of her expert, Dr. Caren Goldberg, on July 30, 2010.  (ECF No. 128)

**B.  Plaintiff Has Flagrantly Disregarded the Court's Scheduling Order**

A finding that Plaintiff's disclosure of these witnesses and experts was untimely does not end the analysis.  Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Civ. P. 16(f)(1) ("On motion or on its own motion, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: (C) fails to obey a scheduling or other pretrial order.").

In determining whether there was a substantial justification for the untimely disclosure and thus whether exclusion is warranted, courts in the Third Circuit must consider several factors:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Penn. State University,* 227 F.3d 133, 148 (3d Cir. 2000) (citation omitted).  Courts also consider the importance of the untimely evidence.  *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (noting that "the importance of the excluded testimony should be considered.") (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, Meyers, 559 F.2d 894, 904 (3d Cir. 1977)).  However, when a party has acted in "flagrant" disregard of a court order, a court is authorized to exclude even "critical evidence."  *Id.*

Here, the Court finds these factors strongly weigh in favor of exclusion.  First, the length of delay of the untimely disclosures (between five and seven months), the proffered reasons for

that delay, and Plaintiff's systematic and repeated violations of the discovery deadlines demonstrate bad faith and a flagrant disregard for the Court's scheduling order.

In each of her oppositions to Defendant's Motion to Strike, Plaintiff includes nearly the same paragraph, to wit:

> In this case, the reasons which were sufficient for the Court to extend all the other deadlines in the case are the same reasons that Plaintiff requests the extension of her expert deadline. Plaintiff experienced a high-risk pregnancy and then had to recover from that pregnancy and tend to her newborn child. Due to these unavoidable circumstances, Plaintiff has not been able to leave her child and has been unable to travel. Due to the Plaintiff's medical condition, the discovery deadlines in this case had to be moved. However, Plaintiff has continued her efforts to move this case through discovery and on to trial. Through her pursuit of discovery, Plaintiff has discovered additional fact witnesses that will bear light to the facts in this case. In an effort to comply with her disclosure requirements, Plaintiff supplemented her disclosure responses as soon as was practicable. The circumstances that existed when the previous scheduling order was in place have been constantly evolving due to Plaintiff's health condition and a more diligent pursuit of discovery was impossible. Plaintiff submits this constitutes good cause to allow supplementation of her disclosure responses.

(ECF No. 173 at p. 4; *see* ECF No. 159 at 4; ECF No. 174 at p. 4; *see also* ECF No. 172 at p. 4 (adding that "Due to these unavoidable circumstances, Plaintiff has not been able to leave her child and has been unable to travel *or to consult on her case until recently*.") (additional language in italics)).

None of these proffered reasons substantially justify her untimely disclosures.  Plaintiff failed to acknowledge that as of June 30, 2010, fact discovery was closed and that as of July 31, 2010, her expert disclosure deadline had elapsed.  As correctly pointed out by Defendant, the Court extended *Defendant's* expert disclosure deadline only because Plaintiff repeatedly claimed that she was medically unable to travel to Tampa, Florida for the IME requested by Defendant's expert.  In the joint motions asking to extend Defendant's expert cutoff date, Plaintiff made no mention of needing more time for her own fact or expert witness disclosures.  Thus, the

10

"reasons" that the Court extended Defendant's expert deadline–that Plaintiff was physically unable to attend an IME requested by Defendant's expert–cannot justify Plaintiff's untimely filing.  Plaintiff has not shown why her inability to travel impacted her ability to file timely motions.

Even though she bears the burden of demonstrating a substantial justification for her failure to abide by the Court's scheduling order (*see Torres v. City of Los Angeles,* 548 F.3d 1197, 1213 (9th Cir. 2008) ("[T]he burden is on the party facing the sanction . . . to demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless.")), Plaintiff's oppositions do not purport to link her excuse–her recent pregnancy and birth of her child–to the untimely disclosures of Parent, Galt, Moorhead, McDonald, and Fahie.   A review of the substance of these disclosures indicates that their untimeliness has nothing to do with Plaintiff's pregnancy.  For example, in his report, Dr. Parent states that he was tasked with reviewing Plaintiff's 2006 and 2008 medical records (generated by Plaintiff's then "treating physicians," Drs. Seifer and Prasad) to determine whether her diagnosed symptoms, including persistent headaches, anxiety, wheezing, fatigue, shortness of breath, nausea and depression, "are consistent with an acute exposure to a mixture of hydrogen sulfide and ammonia."   (Parent Report, ECF no. 211-19)  Dr. Parent did not examine Plaintiff.  He did not opine that her medical condition had changed since 2010 or mention her pregnancy in his report.   His ultimate conclusion that her symptoms were caused or exacerbated by her exposure to toxic fumes at Hovensa was a conclusion that he could have determined prior to Plaintiff's July 31, 2010 expert deadline.  Indeed, Dr. Parent's conclusions are nearly identical to those contained in a 2008 report previously generated by another of Plaintiff's experts, Dr. Robert Buynak:

11

> Ms. Gautier has not felt well since her exposure to H2S gas in December 2005. Her symptoms of wheezing, shortness of breath, cough, nausea and headache have been linked in medical literature to H2S exposure.  Given the timing between onset of these syptoms and the patients's exposure to H2S gas, it is my medical opinion that Ms. Gautier suffered from acute and chronic effects of H2S gas exposure from her job at the Hovensa Oil Refinery.

(July 28, 2008 Buynak Report at p. 8, ECF No. 211-20)[4]

Similarly, a review of the expert report of Robert Galt reveals that its untimeliness has nothing to do with Plaintiff's health condition.  Galt is a vocational analyst hired by Plaintiff to estimate the present value of her alleged permanent disability. (*See* Galt Report, ECF No. 162-3) Like Dr. Parent, he reviewed Plaintiff's medical records as well as documents pertaining to her earning capacity.  (*Id.*)  Also like Dr. Parent, he did not examine Plaintiff and does not mention her pregnancy in his report.  His estimation of her damages is based on a prognosis that Plaintiff is permanently disabled.  (*Id.* at p. 28)  However, Plaintiff has known of this prognosis since at least July 28, 2008, when Dr. Buynak performed an IME on her and concluded that "[g]iven the severity of her medical symptoms, she is permanently disabled for employment."  (*See* July 29, 2008 Buynak Report at p. 9, ECF No. 211-20)  Thus, there is no reason why Plaintiff could not have obtained Galt's report prior to the July 31, 2010 expert deadline.[5]

---

[4] The overlapping nature of the reports further supports exclusion.  *See Hill v. Porter Memorial Hosp.,* 90 F.3d 220, 224 (7th Cir. 1996) (upholding exclusion of untimely disclosed experts in part because "it appears that the trial testimony of Drs. Cranberg and Rothenberg would have been largely, if not totally, cumulative of [plaintiff's] other experts."); *Konstantopoulos*, 112 F.3d at 720 (indicating exclusion of expert was less severe where another expert would testify to the same subjects).

[5] Galt's report indicates that he was hired on November 19, 2010. (*See* Galt Report at p. 1)  Thus, as of November 19, 2010, Plaintiff was aware that she may need more time to disclose Galt as an expert witness, yet sought no extension from the Court until February 15, 2011, and that was only after Defendant sought to exclude his untimely report. *See Konstantopolous*, 112 F.3d at 719 (excluding untimely disclosed expert when plaintiff waited over five months after first consulting with expert before disclosing expert to defendant).

12

Regarding Dr. Totti, Plaintiff argues that her worsening condition, combined with the fact that her prior pulmonologist, "Dr. Suffer" [sic – his real name is Dr. Seifer], left the island of St. Croix, necessitated that she find a new pulmonologist after her expert deadline had expired. (ECF No. 180 at p.2)  Plaintiff explains that the new pulmonologist, Dr. Totti, "had to do testing over a period of months to determine the extent of lung damage and determine treatment necessary.  As soon as Plaintiff obtained the report it was produced."  (*Id.*)[6]  The problem here is that according to his report, Dr. Totti began testing Plaintiff on December 17, 2010.   (Totti Report at p. 4, ECF No. 179-1)  Yet, counsel did not disclose Dr. Totti as a witness until February 2, 2011, almost three months after knowing that he was a potential witness.  Plaintiff does not even attempt to explain how her medical condition prevented her counsel from disclosing the existence of Dr. Totti when he first began treating her.  *See Reese v. Herbert,* 527 F.3d 1253, 1266 (11th Cir. 2008) (affirming district court's exclusion of plaintiff's untimely expert report, filed seven weeks after expiration of discovery period, in part because, "at a minimum, [plaintiff] could have filed a motion to extend the discovery period so as to permit a proper disclosure. He offered no excuse for failing to do so."); *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (upholding exclusion of untimely witnesses following untimely Rule 26(a) witness disclosures in part because defendant's counsel "waited another three weeks before disclosing his witnesses, during which time, even by his own explanation, he should have been aware of their existence."); *Konstantopolous*, 112 F.3d at 719.  Plaintiff's explanation leaves a

---

[6] Totti's report concludes that Plaintiff "developed and continues to this date with the Reactive Airway Dysfunction Syndrome as a result of her exposure to sour water at the Hovensa Refinery on the night of December 2, 2005."  (Totti Report at p. 6, ECF No. 179-1)  This conclusion is similar to that of Dr. Buynak in his 2008 report: "Ms. Gauiter clearly has developed H2S-induced reactive airway disease . . . Following exposure to the H2S fumes she has developed severe clinically evident reactive airway disease/asthma."  (July 29, 2008 Buynak Report at p. 8, ECF No. 211-20)  Thus, Totti's report is not essential to Plaintiff's case.  *See* n.4, *supra*.

host of questions unanswered.  When did Dr. Seifer leave island?  When did Plaintiff first determine that she needed a pulmonologist and that Dr. Seifer was not available?  Why did Plaintiff not alert the Court or Hovensa about her worsening medical condition and resulting need for a pulmonologist until after Hovensa objected to her untimely disclosure?  These unanswered questions cast significant doubt over the genuineness of Plaintiff's proffered justifications.

Any doubt about the genuineness of Plaintiff's excuses is resolved by the untimely disclosure of Virginia Moorhead as a fact witness.  (*See* ECF No. 164-1)  According to the Moorhead Affidavit, filed by Plaintiff in opposition to Defendant's Motion for Summary Judgment, Virginia Moorhead is a former client of Plaintiff's counsel who sued Hovensa in 2003 for employment discrimination.[7]  (*See* Moorhead Aff., ECF No. 210-9; *see also* Civil Cases Nos. 1:03-cv-00004 and 1:08-cv-00049, *Moorhead v. Hovensa, LLC*)  Nonetheless, Plaintiff claims that she was unable to disclose Ms. Moorhead as a witness because "the circumstances that existed when the previous scheduling order was in place have been constantly evolving due to Plaintiff's health condition and a more diligent pursuit of discovery was impossible." (ECF No. 173)  As Plaintiff and Ms. Moorhead were both employed by Hovensa, sued Hovensa for employment discrimination, and share the same counsel, this Court cannot fathom how Plaintiff can genuinely claim that her medical condition prevented her from discovering this witness until

---

[7] Because the Court is required to consider the evidence that Defendant seeks to exclude (*see Konstantopoulos,* 112 F.3d at 719 ("[T]he importance of the excluded testimony should be considered."), and because Plaintiff did not offer the substance of what Moorhead, Fatie or McDonald were expected to testify about, the Court went beyond the substance of the motions to strike to determine the witnesses' testimony.  Plaintiff's opposition to Defendant's Motion for Summary Judgment indicated what Moorhead would testify to, but was silent as to Fatie and McDonald.  Ms. Moorhead's affidavit does not mention Plaintiff nor any of the individuals in Plaintiff's complaint and contains allegations concerning Ms. Moorhead's claims of sexual discrimination.  Accordingly, it is not "critical" to Plaintiff's case.

January 2011 or that "a more diligent pursuit of discovery was impossible."  Furthermore, the affidavit was signed by Ms. Moorhead on **September 7, 2007.**  In other words, Plaintiff is asking this Court to believe that her medical condition prevented her from discovering evidence that had been in the possession of her attorney for *over three years*.  This explanation sinks well below unsatisfactory and casts a shadow of bad faith over all of Plaintiff's untimely disclosures, not just Ms. Moorhead.  *Bouder v. Prudential Financial, Inc.*, 2010 WL 2026707, at *4 (D.N.J. 2010) ("Bad faith is often shown through violation of scheduling orders coupled with unsatisfactory explanations.") (citation omitted); *Pfizer, Inc. v. IVAX Pharmaceuticals, Inc.*, 2009 WL 1885100, at *3 (D.N.J. 2009) ("No reasonable justification for defendants' delay has been provided. The untimely identification of Dr. Cannon as a proposed expert may be viewed as a "flagrant disregard" of the scheduling order and warrants denial of the relief sought.").

Finally, the repeated nature of Plaintiff's untimely disclosures cements this as a case of flagrant disregard for the Court's scheduling order.  As discussed in the above procedural background section, in January and February 2011, Plaintiff repeatedly disclosed fact and expert witnesses as much as seven months after the disclosure deadlines had elapsed.  And these untimely disclosures came after the Court had extended the discovery deadlines by a combined *three* years.  Accordingly, the Court finds that Plaintiff has acted in bad faith and has flagrantly disregarded the Court's scheduling order.  *See In re TMI Litig.*, 193 F.3d at 722 ("Here, the District Court was faced with a pattern of filings that constituted a flagrant violation of pre-trial orders. The pattern was as persistent as it was unjustified. The District Court's exclusion under Rule 37 was well within its discretion."); *Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589, 592 (D.N.J. 1994) ("The repeated violations of the scheduling orders, coupled with Exxon's

unsatisfactory explanation for the instant violation may be characterized fairly as a willful and bad faith breach intended to, circumvent the terms of the case management orders.").

The other *TMI* factors also support exclusion of these experts and witnesses. Defendant claims that including these witnesses and experts will prejudice it in that they came after Defendant had made its preliminary expert disclosures and after mediation, giving Plaintiff a sneak peek at Defendant's theory of the case and permitting her to fix any problems, thus providing her an unfair tactical advantage. Defendant argues that allowing the Plaintiff to disregard the Court's scheduling orders will inhibit the parties' ability to mediate future cases out of fear that Plaintiff will continue to use mediation as a means of learning the defense's strategy and adjust her claims through the use of post-mediation (and post-cutoff discovery). In light of Plaintiff's bad faith, the Court finds Defendant's objections well taken. Plaintiff had nearly four years from the beginning of this case to conduct discovery and obtain the necessary witnesses and experts to support her claims. The fact that she engaged in a flurry of untimely fact and expert disclosures after mediating (and after insisting that the parties mediate over Defendant's objection (*see* ECF No. 140)), more than suggests an element of gamesmanship on her part.[8]

The ability to cure the prejudice and the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases are related factors in this case. Plaintiff argues that Defendant was not prejudiced by the untimely expert and fact witness disclosures because, at the time of her untimely disclosures, the expert deposition deadline had not elapsed, that the trial was months away, and that she would not object to Defendant deposing the new fact witnesses. While the prejudice to Defendant could theoretically be mitigated by

---

[8] Because the Court finds that Defendant has been prejudiced, the Court also finds that Plaintiff's violation of this Court's scheduling order was not harmless. *See* Fed. R. Civ. P. 37(c)(1).

reopening discovery and allowing Defendant to depose these new witnesses and experts, the Court declines to do so.[9]  This case was filed in 2006; discovery deadlines have been extended on at least six occasions, pushing back the close of discovery for nearly three years. At some point, discovery must end so that the parties can determine the total universe of facts and evidence relevant to a case in order to prepare for trial.  *See, e.g., Cochran v. Brinkmann Corp*., 2009 WL 4823858, at *5 (N.D. Ga. 2009) ("The purpose of expert reports and a deadline for serving them is to put an opposing party on notice of what it must contend with at trial . . . the purpose of the report requirement and the order of this Court [] was to end discovery and fix for the parties the evidence and opinions with which they would have to contend at trial so a trial could be fairly and efficiently conducted.")  That point should have occurred at least five and as much as seven months before Plaintiff disclosed the untimely witnesses and experts.[10] Accordingly, the Court will not reopen discovery and finds that exclusion of these experts and facts witnesses is warranted under Rule 37(c)(1).[11]   *See In re TMI Litig*., 193 F.3d at 721

---

[9] Regarding the expert deposition deadline, at the time that the parties jointly extended the expert deposition deadline, September 15, 2010, (*see* ECF No. 131), Plaintiff's July 31, 2010 expert disclosure deadline had already expired.  Plaintiff did not disclose Parent, Galt or Totti until January and February 2011.  It is fair to say that parties agreed to extend the expert deposition deadline in September 2010 with the understanding that only the timely designated experts would be subject to the extended deposition deadline.  Accordingly, the Court will not allow Plaintiff to benefit from an extended deadline not meant to cover its then undisclosed expert witnesses.

[10] The Court notes that Plaintiff has not argued that any of these witnesses are critical to her case. The Court construes this silence as an omission by Plaintiff that this evidence is non-essential. *See Patterson*, 440 F.3d at 118 ("Under the circumstances, with no explanation to the district court of the importance of the testimony of these witnesses, this factor would not indicate that the district court abused its discretion in excluding the witnesses.").  But, even if Plaintiff had demonstrated the importance of the witnesses, her flagrant disregard for the Court's scheduling order warrants their exclusion. *Konstantopoulos*, 112 F.3d at 719 (holding that critical evidence may be excluded when party flagrantly or willfully disregards a scheduling order).

[11] In other discovery abuse cases, courts have acknowledged that preclusionary orders serve to deter future conduct. *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp*., 602

(upholding district court's finding of prejudice where the district court refused to postpone the trial).[12]

### C. Plaintiff Has Not Demonstrated Excusable Neglect

In addition to opposing Defendant's motions to strike, Plaintiff also seeks to extend the time for her to disclose these witnesses under Fed. R. Civ. P. 6(b):[13]

When an act may or must be done within a specified time, the court may, for good cause, extend the time:

---

F.2d 1062, 1066 (2d Cir. 1979) ("[C]ourts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault.") (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) (per curiam); *In re Tutu Wells Contamination Litig.*, 162 F.R.D. 46, 63 (D.V.I. 1995) ("[O]nce culpable conduct is found, the court is required to impose such sanctions that are just, both to penalize the wrongful conduct and to deter those who might be tempted to such conduct in the absence of a deterrent.") (internal quotations and citations omitted); *Higginbotham v. Volkswagenwerk Aktiengesellschaft*, 551 F. Supp. 977, 982 (M.D. Pa. 1982) ("Orders of this court and the discovery process were flouted by the plaintiff. In such a case, harsh sanctions must be imposed not only to prevent prejudice to the defendants but to preserve the integrity of court-supervised discovery, thus deterring others from similar conduct."). The Court finds exclusion is warranted here to deter future conduct in this and other litigation.

[12] In her oppositions, Plaintiff cites several cases that she claims undermine exclusion. (*See, e.g.,* ECF No. 173 at 3-4) However, unlike here, in each of those cases, the court found that the untimely party did not act in bad faith and that the party moving for exclusion would not be prejudiced. *See Johnson v. Portz*, 707 F. Supp. 2d 494, 499 (D. Del. 2010) (finding exclusion unwarranted because plaintiffs did "not state[] any harm that they would face if Mr. Jones is allowed to testify. Second, there is no indication of bad faith on the part of Defendants . . . ."); *De La Cruz v. V.I. Water & Power Auth.*, 2010 U.S. Dist. LEXIS 57657, at *4-6 (D.V.I. 2010) (finding exclusion of defendant's expert report unwarranted because the parties had stipulated to a deadline that would have made the otherwise untimely report timely but had forgotten to file the stipulation with the court: "As soon as it became aware the stipulation had not been filed, Defendant filed a motion requesting an extension. Therefore the delay was inadvertent and not in bad faith and could hardly be argued was willful."); *Robinson v. Freightliner LLC*, 2010 U.S. Dist. LEXIS 22244, at *3 (M.D. Pa. 2010) (refusing to exclude expert report produced one month after expert report deadline because "Freightliner does not assert that it has been prejudiced in fact by the late disclosure of Mr. Lake's expert report" and "there is no reason to believe that the delay was caused by dilatory or ulterior motives.").

[13] Plaintiff included the Rule 6(b) motions in her oppositions to Defendant's motion to strike and did not file separates motion for extensions of time. The Court instructs Plaintiff and her counsel that any future motion for an extension of time must come in a separately noticed motion.

(A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
(B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b)(1).

As the Court's discussion has made clear, Plaintiff's repeated untimely disclosures and subsequent unreasonable excuses amount to bad faith.  As a result her Rule 6(b) motions are denied.  *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (holding that excusable neglect requires "a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.") (citation omitted).

## IV.   <u>CONCLUSION</u>

For the reasons discussed above, it is hereby

**ORDERED** that Defendant's Motion to Strike the Untimely Expert Disclosure of Dr. Richard Parent [ECF No. 154] is **GRANTED**;

**ORDERED** that Defendant's Motion to Strike the Untimely Expert Disclosure of Robert Galt [ECF No. 163] is **GRANTED**;

**ORDERED** that Defendant's Motion to Strike the Untimely Disclosure of Virginia Moorhead, John McDonald, and Sharisma Fahie [ECF No. 164] is **GRANTED**;

**ORDERED** that Defendant's Motion to Strike the Untimely Disclosure of Dr. Noel Totti [ECF No. 171] is **GRANTED**;

**ORDERED** that Defendant's Motion in Limine to Exclude the Untimely Report and Testimony of Dr. Noel Totti [ECF No. 179] is **GRANTED**;

**ORDERED** that the above witnesses and experts may not testify in this matter and that their expert reports may not be entered into evidence;

**ORDERED** that Plaintiff's Motions To File Out of Time Nunc Pro Tunc [ECF Nos. 159, 172, 173, 174, and 180] are **DENIED**.

<strong>ENTERED</strong>:

Dated: September 27, 2011        _____/s/_____
                                     RAYMOND L. FINCH
                                     SENIOR U.S. DISTRICT JUDGE